## Wellner's Estate.

*Executors and administrators — Inventory value — Credit for difference between inventory value and sum realized at sale.*

1. An administrator, in the absence of negligence or bad faith, is chargeable only with real values when ascertained by a proper sale, notwithstanding the fact that the sum realized by the sale is much less than the values at which the assets were inventoried and appraised, especially where it was not shown that more could have been realized at some other time.

*Accounting — Sums due from real estate account to personal property account—Practice in award to administrator d. b. n.*

2. Where the account of an administrator indicates that the real estate account advanced to the administrator $8275.35, and the administrator claims credit in his own account for $3500, due as compensation for selling and managing real estate, the latter sum is properly chargeable to the real estate and may be set off against the former, and an award to the real estate account of $4775.35 is free from error.

3. Where the account of an administrator shows a balance chiefly of unconverted assets, distribution thereof to the administrator *d. b. n.* is proper, and at the audit of the account of the original administrator, no awards either to the distributees or to the Commonwealth as a claimant for transfer inheritance tax will be made; nor will the court make any specific award in regard to the liability of the original administrator for the expenses of the administration *d. b. n.;* such questions can be properly determined on the adjudication of the account of the administrator *d. b. n.*

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1918, No. 884.

It appears from the adjudication of THOMPSON, J., Auditing Judge, that the decedent, Julius Wellner, died Nov. 16, 1917, intestate, leaving a widow and a daughter, who was of age, and a minor son, for whom a guardian was duly appointed. Letters of administration were granted to the widow. The decedent was a dealer in musical instruments and conducted his business at No. 923 Walnut Street. The instruments consisted of automatic pianos, meaning thereby a piano into which a coin is dropped by a slot, upon which the piano automatically plays. There were about 275 such pianos on hand at the time of his death; some of which were under sale on instalments by means of bailment leases, and some were in various places, particularly saloons, on a percentage basis, whereby the decedent received part of the money dropped into such pianos. The inventory showed personal estate amounting to $104,412.71, of which $23,900 consisted of instalments due on the sales of pianos and $27,000 represented the value of the pianos out on a percentage basis. There were several pieces of real estate, some of which were subject to encumbrances. Decedent's debts at the time of his death amounted to $161,000. On Dec. 30, 1918, the administratrix filed her account, which, by agreement of all parties, was, on May 9, 1919, referred to J. B. Colahan, Jr., Esq., since deceased. Mr. Colahan filed his report Feb. 17, 1920. On April 28, 1924, the administratrix filed a second account. In view of the fact that she had remarried and moved to New Jersey, leaving the affairs of the estate in the hands of her attorney, Henry John Nelson, Esq., the Auditing Judge suggested that she should resign, which she did. He thereupon entered a decree discharging her from her office as administratrix, subject to an accounting. Rodney T. Bonsall, Esq., was appointed administrator *d. b. n.* by agreement of parties. Mr. Bonsall liquidated the estate and realized therefrom $11,890.30. In regard to the character of the administration, the Auditing Judge said in his adjudication:

"As previously stated, the decedent was in the musical instrument business at No. 923 Walnut Street, occupying only a portion thereof and renting out the balance. As he died about seven months after our entry into the Great

Wellner's Estate.

War, business conditions were such as to make it exceedingly difficult, if not impossible, to liquidate his affairs in such a manner as to realize enough to pay his debts, to say nothing of saving anything for the heirs or next of kin. The business was conducted by those in charge as best they could, appeasing creditors by small payments on account from time to time. In order to do this, the rent of the aforesaid real estate was used, repairs to the same, as well as taxes and building association payments, being made out of whatever moneys were available, either from the business or the rents of real estate, with the result that the records of the assets, as well as the affairs of the estate, were in indescribable confusion. The administratrix, being a woman of no business experience, relied entirely on Mr. Nelson, her counsel, who conducted and managed the business and affairs of the estate until the appointment of Mr. Bonsall as administrator $d. b. n.$ Fortunately, there is no suggestion that either Mr. Nelson or any one connected with the affairs of the estate personally profited by what they did in their endeavor to pay the creditors and save something for the heirs, other than to make a charge for their services so rendered. I am convinced that if the business of the decedent had been liquidated and the real estate sold within a reasonable time after the death of the decedent, nothing would have been realized to pay heirs and next of kin, and that the delay resulted in obtaining more for the real estate than otherwise could have been obtained for the same. The daughter of the decedent and the guardian of his minor son were constantly at the place of business of the decedent after his death, and while I cannot say that they approved of the delay in the settlement of the estate, they were thoroughly familiar with the difficulties involved, and had no constructive suggestions to make as to the speedy liquidation of the same. In this I think they acted wisely, and the results show that the delay was for their benefit. The decedent's debts have all been paid or provided for, and there is a substantial surplus for the heirs and next of kin. Under these circumstances, I do not think that the objection to the commissions of the accountant and the fee to Mr. Nelson, as stated in the account, have any merit, and they are not sustained. It may be noted that the commissions in the account are less than that allowed by the auditor.

"When Mr. Bonsall was appointed administrator $d. b. n.$, it became necessary to find the balance in the hands of Mrs. Thoren [administratrix] that should be turned over to him, and to this end, and acting in conjunction with the Fidelity and Casualty Company of New York, the surety on the bond of Mrs. Thoren, a complete statement of account from the death of the decedent was prepared by Ernst & Ernst (at the expense of the surety) covering thirty-four pages, and showing on page 13 a balance of $33,907.46. This balance is arrived at by charging the administratrix with the amount of inventory, and includes all other items of debit and credit, whether from real estate or personal property, and whether handled by the administratrix in the management or liquidation of the business or otherwise. While this is not proper accounting in this court, under all the circumstances of this case, I do not see how an account could be intelligently stated in any other way. The account so prepared and showing the above balance has been agreed to as correct by all parties in interest, who have signed a stipulation to that effect, which I will annex to this adjudication. This stipulation also shows the questions which are disputed and for me to decide, as well as a list of the debts remaining to be paid, and the balance turned over to Mr. Bonsall. A credit is claimed for the difference between what the account shows to be in the hands of the accountant and the amount turned over to Mr. Bonsall, on the theory that this represents losses in the liquidation of items with which the

Wellner's Estate.

accountant is charged and the sum actually received thereon. I think this credit should be allowed in the absence of any evidence tending to show that more could be realized or that the loss was due to any misconduct of the administratrix. Exhibit A, annexed to the stipulation, shows a list of the debts yet to be paid. These are allowed as stated, but payment cannot be decreed until the filing of Mr. Bonsall's account. Exhibit A also shows that the funds in the hands of the accountant owe real estate $8275.35, and page 3 of the account shows a payment to Mr. Nelson as fee and costs of $3867.50, of which $3500 is a fee in connection with the sale of the Walnut Street real estate. As this is a fair charge for the service rendered, and is included in the above sum of $8275.35, there should be deducted from that amount $3500, leaving the funds in the hands of the accountant as due real estate the difference, to wit, $4775.35. As the account before me is that of a discharged administratrix, who has turned over all the assets to her successor, no awards can be presently made, and the liability of the next of kin for transfer inheritance tax can be adjusted upon the filing of Mr. Bonsall's account."

Exceptions were taken by decedent's daughter and the guardian of his minor son (1) to the refusal of the Auditing Judge to surcharge the accountant with the difference between the inventory value and the amount produced by the sale of the assets; (2) on the allowance of $3500 as a fee to Mr. Nelson in connection with the sale of No. 923 Walnut Street and the deduction of that amount from the amount due by the administrator to the real estate; and (3) to the ruling of the Auditing Judge that he could not determine upon this accounting the liability of the next of kin for transfer inheritance tax or surcharge the accountant with interest and penalty upon the tax, if any, not yet assessed.

*A. M. Haig* and *Joseph Klapp Nicholls*, for exceptions.

*Henry John Nelson, William G. Wright* and *Conlen, Acker, Manning & Brown*, contra.

VAN DUSEN, J., July 3, 1925.—The first exception relates to the allowance by the Auditing Judge of a credit to the accountant for the difference between the balance for distribution shown by her account, $33,907.46, and the sum of $11,890.30 actually realized from the assets which composed this balance. The administratrix, after filing an inventory and conducting the business for some time, gave way to an administrator *d. b. n.* without completing her administration. In the present account the administratrix is charged with the inventory and the account winds up with a balance composed of unconverted items still carried at inventory values, as they must be. She is, however, chargeable only with real values when ascertained by proper sale. The administrator *d. b. n.* sold these assets and all parties have stipulated that the price he received represents their fair cash value at the time they were liquidated. The exceptant failed to show that these assets could have been disposed of to greater advantage at any other time; the whole testimony shows that the delay in winding up the business and the disposal of the assets was to the advantage of the estate. Credit was, therefore, allowed to the administratrix for the loss thus sustained; and the first exception is dismissed.

Exceptions two and three relate to the following action of the Auditing Judge: The real estate account had advanced to the administratrix $8275.35 and should be repaid. But the administratrix claimed credit in her own account for $3500 due her as compensation for selling and managing real estate, which amount she had turned over to the attorney who did the work.

This sum the real estate account owed to the administratrix, as it was an item properly chargeable to real estate. The Auditing Judge set off the one item against the other and awarded to real estate $4775.35. The result is correct; and the second and third exceptions are dismissed.

Exceptions four, five and six relate to the refusal of the Auditing Judge to determine the liability of the next of kin for transfer inheritance tax, stating that it could be adjusted upon the filing of the account of the administrator *d. b. n.;* to the refusal of a surcharge for interest and penalty on transfer inheritance tax (which has not yet been assessed); and to the refusal of a surcharge against the administratrix of the costs and fees of the administrator *d. b. n.* when calculated and allowed. The account shows a balance chiefly of unconverted assets, which were all turned over to the administrator *d. b. n.* This was a proper distribution, and no awards to distributees or claimants, including the Commonwealth, could be made, as there was nothing to distribute. It would be premature to express any opinion as to the liability of the administratrix for interest and penalty on inheritance tax until such penalty and interest, if any, has been assessed by the Register. The question is one for the Register's determination in the first instance; an expression of opinion as to ultimate liability might seem an attempt to anticipate his judgment. The amount of the expenses of the administration *d. b. n.* is not determined and the court can make no specific award with respect thereto. The practice of the court is to make surcharges of specific sums on which orders to pay, attachments and other process may issue; and the court, generally speaking, should not indulge in general declarations of liability. These observations apply also to liability for penalty and interest on inheritance tax.

The confirmation of the account of the administratrix should now be made, however, without prejudice to the right of the distributees to demand a surcharge as to penalty and interest on tax, if any, premium on administratrix's bond and expenses of the administration *d. b. n.* when they are liquidated. These questions can be determined on the adjudication of the account of the administrator *d. b. n.*, and as the former administratrix is a distributee, such surcharges, if any, can be deducted from her distributive share, and if that is not sufficient, her surety will be liable therefor. To this extent the fifth and sixth exceptions are sustained and the adjudication modified accordingly.